Good afternoon, Your Honors. Deputy Attorney General Sarah Barnes for defendants Pam Allen, Dolly Matucci, Patricia Tyler, and Cindy Blass. I'd like to reserve five minutes for rebuttal, please. Okay. Yes, I'm sorry. I thought you were, I got, I got the appellant mixed up. There is no case holding incompetent to stand trial defendants can bring a 1983 claim for damages against employees of a state hospital to which they have been committed but not yet physically transferred. The hospital employees are entitled to qualified immunity because there is no case clearly establishing that their alleged conduct failing to provide notice of the acuity review process violated Mr. Luong's constitutional rights. The hospital employees are also entitled to qualified immunity because they did not violate Mr. Luong's constitutional rights when they did not have custody of him or control the conditions of his confinement. Rather, it is the county jail that assigned a Rep Popal to be Mr. Luong's settlement. It is the county jail that failed to do safety checks on Mr. Luong and it is the county jail that turned off the intercom in Mr. Luong's cell so that they could not hear his cries for help. Alameda County is responsible for Mr. Luong's injuries and plaintiffs have already settled with the wrongdoers. As to plaintiff's cross appeal, the court should decline to hear it for lack of jurisdiction. Can I ask a question to the cross appeal please? Assuming if we were to reverse on the one piece where Judge Tan denied the summary of the qualified immunity that you're appeal, the case would still be pending before Judge Tan but he would have to enter final judgment and we meet back here on exactly the same appeal. Is that right? As they're trying to as a cross appeal? No, the cross appeal does not handle all of the outstanding issues in this case. There are still the claims against the entity defendants which are not raised by either party on this appeal and then there are also state law claims against the hospital employees that are not at issue on either appeal. So even if the court grants the hospital employees appeal, there are still other issues that would need to be resolved once judgment is entered. Sooner or later we would be in the same place. Yes, of course and that's an issue every time when a qualified immunity denial is appealed. So government actors enjoy qualified immunity unless their conduct violates clearly established law and the district court correctly applied that standard to three of plaintiff's four theories of liability but the district court then erred when it analyzed that same requirement with the notice theory. While courts do not require a case directly on point, existing president must have placed the statutory or constitutional question beyond debate and that standard is not met here. Neither the district court nor plaintiffs have any case addressing acuity reviews or notice of the acuity review process. Counsel, this is Judge Schroeder. It would help me a little bit because these immunity issues are often quite factually oriented. If you could present the issues, give us a little more factual context for how your issues arise. For the acuity review process, your honor? Or what the plaintiff is claiming that should have been done. So the district court divided up plaintiff's 1983 claims into four theories of liability. Number one, that the hospital employees should have provided notice of the acuity review process. Really back up and tell me who is the plaintiff? Where was the plaintiff? Who is he suing and why? Sure, thank you. So Mr. Luong was arrested in January of 2016 and he was once he was arrested he was taken to Santa Rita jail in Alameda County. A couple months after that, questions about his competency arose. After three different alienists evaluated him, two of the alienists evaluations said he was incompetent to stand trial. One alienist, the first one, said he was competent to stand trial. But the judge at that point decided that he was incompetent to stand trial and asked for CONREP to make a placement recommendation. CONREP, which is in this case Alameda County Behavioral Health, made the recommendation that Mr. Luong should be placed at Napa State Hospital. And then at that point 31 days go by before that commitment order or any information about Mr. Luong is provided to the Department of State Hospitals at Napa. And he's in jail, right? He's in Santa Rita jail in Alameda County. During that time, his mental health condition did deteriorate so the jail did the correct thing. They sent him to John George on a 5150 two times so he could get mental health treatment for his acute crisis. And then after that treatment he was returned both times to Santa Rita jail. The commitment packet was transferred to the Department of State Hospitals on August 22nd and then he was immediately placed on the wait list because all of the state hospitals were at their statutory capacity and licensing capacity. Then in October, the county jail assigns Aref Popal to be his cellmate on October 7th. On the 11th, he's ready for admission on the wait list. So Napa State Hospital contacts the jail to schedule the transport, which is done by the by his cellmate. So the defendants in this case are just four individuals. Pam Allin, who at the time was the Director of the Department of State Hospitals. Dolly Matucci, who is the Executive Director of Napa State Hospital. Dr. Tyler, she was the Medical Director of Napa State Hospital. And Cindy Black, who was the Clinical Administrator at Napa State Hospital. Now none of these defendants even knew about Mr. Luong until after he was murdered. But they are the defendants in this case because the claims against the entity defendants have already been dismissed. So the claim against your defendants is what? 1983 for a violation of the 14th Amendment. They're seeking money damages, including punitive damages. Right. And what do they say that you should have done or should not have done? As you understand. So in. In the second amended complaint, I believe the paragraph two said this is a wrongful death civil rights action and that the actions of all the defendants, which were both the county defendants as well as the state defendants, caused Mr. Luong to be murdered by his cellmate. And they said that the hospital. Can I say something for a minute? I thought, although it's not lucid, I would agree that the brief suggests that the actual claim is for the loss of liberty of being kept in jail for much longer than he should have been under a similar case. And that the murder comes in if it comes in at all. And I think it's difficult and attenuated and a proximate cause question of the fact that he was in jail at that point. But I don't think if the complaint says it's wrongful death action, it's not my understanding their current position. Is that right? I'm using plaintiff's own words in their second amended complaint, which says this is a wrongful death civil rights. Okay, but their legal position is that you only get, you know, you get to the death as a proximate cause of a deprivation of liberty, but that was longer than it should have been. Much longer. The plaintiffs did complain about the delays, the waitlist with the Department of State hospitals, as well as the delay, the 50 day delay between when the commitment order was transferred to Napa and when Napa had a bed available to admit him. So as to how this claim goes against the hospital employees, any issues about the waitlist or delays are not an issue in the hospital appeal, but they do come up in the cross appeal. And those issues are also being litigated right now, as you mentioned in the Stiavetti case coming out of Alameda County. So what is it, what is it, what is your understanding of what your client is alleged to have been responsible for doing the do? So the plaintiffs complained that the hospital employees did not provide a more formal notice of the acuity review process because Dr. Tyler testified at her deposition that she had conversations with public defenders, jail personnel, courts about the acuity review process prior to the regulation being promulgated. The regulation was promulgated in September 2016 before Mr. Luong was murdered, but plaintiffs complained that a letter should have gone out is my understanding. From whom? I'm sorry, there was two people talking. I'm sorry, the letter was supposed to go to the jail? Is that your understanding? The jail and other actors such as the jail, the court and the public defender's offices. So what is exactly this going through regulation? Let me tell you what I think the story is, is that it was it was promulgated as an emergency regulation in September 2016, at least appeared in the equivalent of the state equivalent of the federal register, but it was finally promulgated a year later. Is that accurate? Yes, so it was promulgated as an emergency regulation in September of 2016, to promulgate an emergency regulation, you still need to provide notice and as public, there's still a public comment period, but it's a much shorter period than for doing the regular issuance of a regulation. There's a longer notice period for the public to weigh in. Hey, Ms. Barr, aren't you down to about four minutes? Yes, please. Thank you. All right. Now, Mr. Haddad. Thank you, Michael Haddad for the plaintiffs. So your honors, this case is about the rights of inmates in jail who have been declared by a court to be incompetent to stand trial. And as this court stated, a long time ago in the Oregon versus Mink case, they have two rights under the due process clause. First of all, one is the right to be free from continued incarceration after their charges have been suspended. And the other is the right to as ordered by the court. In the Mink case, the court affirmed an injunction requiring the state of Oregon to provide that treatment within seven days. And this court explained that failure to provide such treatment in a timely manner, meaning longer than weeks or months, violates the due process rights of the IST defendants. That's exactly what happened here because when Mr. Haddad was declared incompetent and committed to Napa State Hospital, ordered into their care, 81 days went by before he was finally going to be admitted. And unfortunately, that was the day that he was also killed. The defendant administrators were basically apex administrators with budgetary authority who had the means and the ability to allow him into Napa State Hospital despite the long wait list. They could have created openings in numerous ways, which the plaintiffs have provided factual support for. And over many years, they chose not to do it. As the California Court of Appeals noted recently in the Kareem A case, the defendants had years to try to change and fix a system that was under their supervision. Yes, but counsel, would you please refine what it is that this hospital should have done in this case? Exactly. Yes. First of all, as a district court found, they had an unwritten practice in 2016 before the regulations went into effect. It's the practice that would have applied here. To do an acuity review, which is basically a triage that paid the ISD patients on the waiting list to let the sickest ones in first. But they would only do that acuity review request from someone at the jail level. And they never informed anybody at the jail level that that was possible. So as a district court found, this informal procedure to allow the sickest in first would not work because they didn't tell the people about it. Now, at the time, Mr. Luong's public defender, Clifford Blakely, he gave a declaration in the case that back then he had no idea this was an option. No one ever told him that. He's now been elevated to a superior court judge and he says even now, he's never been made aware that such a review is possible. That's the first thing they could have done. But wait, wait, what about the regulation? What doesn't the regulation provide that it's possible? The regulations went into effect after all of this happened. The emergency regulation. When was the emergency regulation going to affect? In September of 2016. And Mr. Luong was committed to the state hospitals on July 22, 2016. But before he was killed, presumably the next day, would have had notice and could have called up the hospital and said, I'm running a county review. Theoretically, you are. Is there a claim that it's inadequate notice, that some other notices needed besides the implementation of a regulation? People at a state level or anywhere are not watching the regulatory code to see if it changes from day to day. The state never told anybody that they had this procedure whatsoever. And so nobody knew to ask. That's the first thing they should have done. But they also could have done and should have done. They should have provided acute for everybody that was declared incompetent to stand trial. No hospital would operate in such a way that somebody coming in with a heart attack has to wait in line behind someone who got there earlier with a sprained ankle. And that's exactly. Do all hospitals have acuity reviews like this? Every emergency room in the country has a triage system where they bring in the sickest people first. And we have expert testimony in the record here that has to be credited that the state hospital system should have had an acuity review system because it's critical to take care of those with the most severe psychiatric needs first. And they have a duty not to be deliberately indifferent to those needs or to fail to act as a reasonable professional would act in these But the question here in this case is one of on your federal claims qualified immunity. Right. And your best case is Mink. Tell me how you think Mink applies here because your theory about not the duty to inform is something different. And what was that issue in Mink? Not really, your honor, because Mink Mink says describes what the right is that is in fact clearly established. The right to be free from continued incarceration after being declared IST and the right to timely restorative treatment. That's the level of of clarity required by the Supreme Court as the Supreme Court just explained again in Taylor versus Riojas. General constitutional rules may apply with obvious clarity. And in Taylor versus Barkas, another Supreme Court case cited by defense that actually helps us. The Supreme Court explained that in that situation, the third circuit's framing of the right at issue there simply as the right to suicide screening. They had no problem with that, but they found that it was not clearly established in the third circuit in 2004. And they never reached the more specific factual issues of what the defendants failed to do to protect that right. Now the defendant here is the hospital, not the jail. The defendant are the hospital administrators, individuals with the power to make specific changes, many of which we've we've cited in our brief in multiple places. As this court explained in Horton versus City of Santa Maria, there is a process that the court follows when deciding qualified immunity in a due process case. Because there's inherent problems in reviewing qualified immunity when there's a subjective intent component. And here, since this incident happened back at the time when there was still subjective intent for qualified immunity, excuse me, for a due process claim even of a pretrial detainee, we can accept that for the qualified immunity analysis. So as the court explained, what we're supposed to do first is look at the more objective components. Is there evidence in the record that the plaintiff or the decedent faced a substantial risk of harm? Well, yes, there is evidence because all of the defendants admit not only was there such a risk, but they were aware of it. They were aware that jails failed to provide adequate medical care. They were aware that people with severe mental illness are likely to be preyed upon by other inmates. We also have expert testimony, including from a renowned epidemiologist who's done a study and greater harm disproportionately than other non-mentally ill inmates in their population from predation by other inmates. So this is what a reason... Excuse me, sir. This goes to the question I was asking your opponent earlier. I thought that your brief suggests that the predation issue is not really directly involved here. Is that not true? That's not... It is important. It goes to the risk of harm that any reasonable official in the defendant's shoes would have known about and that in fact these defendants admit knowing about. There's testimony in the record that they knew that individuals situated like Mr. Luong were at greater risk of predation in the jails, yet they failed to take reasonable measures that they could have taken to evade the risk to him and to evade the risk that his rights would be violated. In fact, they knew his rights were being violated. Dahlia Mattiucci said she was concerned that inmates were having to wait more than weeks or months that their rights were being violated. They had options. They could have expanded bed capacity. They could have done acuity reviews for everybody that was going to be sent to Napa State Hospital. And expert testimony here is that it only would have required an additional one or two clinicians to do that. They had that possibility. This is a claim that anyone still in a jail that needs medical treatment could bring, is that right? Absolutely not. No. Why? Only because Mr. Luong was ordered by a court, found incompetent to stand trial, and ordered to be committed to the Department of State Hospitals. Yes, but there are a lot of people like that because of the limited capacity in the hospitals in California and the fact that they've been told by courts that they've got to avoid overcrowding. Right, and it's not an overcrowding that's beyond their power to rectify, Your Honor. It's been going on for more than a decade and there are individuals making these decisions knowing that many inmates' rights are being violated. So far, we've identified 12 inmates who have died waiting to be admitted to a state hospital. Well, so what is it that they should have done with respect to your client that that they didn't do? I thought it was that it's not that they didn't construct a new hospital, is it? No, no, they could have. There's expert testimony in the record from Dr. Hayward and Dr. Gage that they could have more efficiently moved patients through their system to increase beds in that way without increasing their bed capacity, number one. Number two, they could have treated IST inmates, who at that point are merely civilly committed, equal to how they treat convicted prisoners who they do not take on a first-come, first-served basis, but they actually triage all of them. That's a record, Your Honor. They could have decided to triage everybody, in which case there's evidence in the record here that Mr. Luong was one of the most severely mentally ill and at the highest risk and he would have gotten in much earlier and he wouldn't have been killed. They could have triaged a subset of everyone, only those with involuntary medication orders, which would probably be in the range of 400 to 800 inmates, excuse me, inmate patients per year. Well, we're here on a piece from the question of immunity. Right. So what is the authority that you're relying on that says that there is immunity, not immunity? This court's decision, Wilkes v. Nevin and the Castro decision, which we cited in our reply brief and in our original brief, both explain that there's a two-step process for reviewing qualified immunity. So first, you determine whether reasonable officials and these officials would have understood the risk and I think we've shown that. And second, once that is there, then reasonable officials are required to take reasonable measures to abate that risk. Now, this court has explained, for instance... But wait, and then you do walk into the stigma wrap of Wilkes and Horton and all that as to whether you also meet a subjective standard. And I don't know what your position is about that. Well, Your Honor, following... I think we're required to address qualified immunity under the previous subjective standard, at least for the deliberate indifference claim. But we also have the Mink claim, which is not a deliberate indifference claim. You know, it's a reasonable medical professional's judgment claim. And so I think that's a different, more objective standard anyways. But I'm saying even under the deliberate indifference standard, for example, in the Castro case, which was addressing that, the court said, look, it's requiring too much to identify every way in which a prisoner could be injured by another prisoner. And that's kind of what the defendants are requiring here. Once the court has identified the right at issue, and we have identified it in three different ways, then the defendant has to take reasonable measures to abate that risk. But the right at issue, most broadly, but not that broadly, is the Mink right not to be detained for a prisoner who has been committed for a competency training to be kept in a jail rather than treated for weeks or months. I mean, without getting into exactly how much time we're talking about. Is that the right we're talking about? That's the Mink right. It's two rights, actually, under Mink. And also under straight up due process, deliberate indifference to medical needs. There's a Hutchinson's case, which says medical officials who engage in denial, delay, or intentional interference with medical treatment have been deliberately indifferent to rights. So here they clearly denied, delayed, and intentionally interfered with his court. But that's more difficult for you because it's the jail that's doing that, it seems to me. I understand you say there isn't some constructive custody of the hospital, but in fact, he's not in the hospital. Your stronger claim, it seems to me, is that the hospital, he has been referred to the hospital and the hospital is the one that has the ability to see that he is, in fact, gets into the hospital and is treated. He was ordered to the hospital, a court order. Right. I understand and it is also a more specific right. So sticking to that, because I think it's your stronger ground, for qualified immunity purposes. And I think one of the problems here is that you then divided up what's really a suggestion of what should have been reasonably done into different pieces, rather than just saying something reasonably should have been done and nothing reasonably was done. Well, your honor, that's how we presented it at summary judgment. It was the district court that parsed out these four particular theories and then denied summary judgment on one of them and improperly and inconsistently granted it on the other three. So this court can affirm on any court rejected. But then we have the jurisdictional problem and I found the, although I was a little skeptical of it, I do find the state's explanation as to the fact that there is still more pending in this case. I gather that's accurate, right? There is nothing else pending in this case other than this one federal claim and one corresponding negligence claim on the same factual theory, limited to that one factual theory. Now, if this court... He said there were other defendants and other claims. No, they're all out of the case. They were settled out and this is the last of the case. Now, at the end of the case after... So what he told me is not true? I don't think she said it untruly. I think she did say that other defendants from the county have settled out. The only defendants remaining are these individuals and the state, but the state was already let out of the case. We had an ADA claim against the state and so the district court granted summary judgment on that claim. My point is, is that you're right, Judge Berzon. If qualified immunity is granted across the board to the defendants, the plaintiff would appeal everything the plaintiff has appealed here, plus additional claims that we don't believe are inextricably intertwined, so we didn't ask the court to decide those today. They're still pending. State law negligence claims. And an ADA claim as well. Yeah, so I mean, if you wanted to get appeal, you'd have to get a 54B certification. I'm saying that if the court granted qualified immunity... Well, it's true. There would be a negligence claim. That would be the last claim. Then we'd have a trial of just that and then afterward, then we would appeal everything. So counsel, I'm still trying to understand what the hospital was supposed to have done that it didn't do, that violated the constitutional rights. If I understand the briefs, it is that the hospital should have provided notice to the jail of this program that it has to assess the needs of the prospective patient who has been to the hospital. Here's what the hospital officials should have done. They were required to take reasonable measures to abate the risk of the violation of Mr. Luang's rights. Those reasonable measures are many different things, and so they had a variety of options. They had a whole assortment, a buffet of options they could have done, any one of which would have been sufficient to protect him. What is the case? I'm trying to understand where you have a situation in which the plaintiff is in the custody of the jail and you're saying that the hospital failed to do things that it should have done. What is the case that establishes that so that we can get past this immunity problem? Sure. There's three reasons why the state essentially had custody of him. No, no. What is the case? What is the authority that makes this clearly established that he should be regarded as being in that the hospital should have stepped in in some fashion to take over or to provide notice or whatever it is that you're claiming they should have done. Mink and Trueblood could not have happened unless the state had a duty to protect the rights of IST defendants ordered into their treatment. Okay. Who are the defendants? Sorry? I was going to say it was about five minutes over his time. If you have a question, go ahead. Oh, okay. It's just a very simple one. Who were the defendants in Mink and Trueblood? They were the state, the state hospital. Okay. Counsel, thank you for your argument and we'll hear rebuttal. This is not a case against the Department of State Hospitals seeking systemic change. This is a case against four individuals, Pam Allen, Dolly Matucci, Patricia Tyler and Cindy Black, seeking to hold them liable in money damages for what happened while in the county jail. There's three reasons that Mink does not apply here. Number one, Mink's seven day deadline was based on Oregon law. Number two, Mink did not discuss acuity reviews at all. And number three, since Mink was a case against the state for injunctive relief, things like the special relationship exception and deliberative indifference, these legal standards were inapplicable and therefore were not discussed. It's not true that these hospital employees create the budget for the Department of State Hospitals. It's the legislature that creates the budget. And we presented evidence that it was beyond the authority and control of these four hospital employees to expand bed capacity. And lastly, this is not a case where it is obvious that failing to give notice of the acuity review process would violate an IST defendant's constitutional rights. The narrow issues on clearly established law put these individual hospital employees on notice that they would be violating the constitution if they did not provide notice of the review process and whether there was a special relationship between the hospital employees and Mr. Luong. Because the answers to these questions is no, they are entitled to qualified immunity. Thank you. Further questions? Thank you for your arguments. The case just argued will be submitted for calendar this morning, this afternoon.
judges: Schroeder, Thomas, Berzon